UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff | ) ) ) ) ) ) ) ) ) ) | Criminal No. 15-53-GFVT **OPINION & ORDER** |
| V. | | |
| NUCOR STEEL GALLATIN, INC., Defendant | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Equal Employment Opportunity Commission seeks a declaration that it may enter the private commercial property of Defendant Nucor Steel Gallatin, Inc., without Gallatin's consent and without an administrative warrant, to investigate a hiring discrimination claim. The parties apparently agree that, to date, no federal court has fully explored the authority of the Commission to conduct a warrantless, nonconsensual search of private commercial property. The Court now finds that, although the Commission must obtain pre-compliance judicial review before performing nonconsensual inspections of private commercial property, this approval need not always come in the form of an administrative warrant. Instead, the court's review process must provide a nonconsenting owner with safeguards roughly equivalent to those afforded under a traditional warrant procedure. Here, the Court's thorough review of the Commission's request lends all the protections a formal warrant procedure would otherwise provide. The Court will therefore enforce the Commission's subpoena, subject to the conditions carefully laid out below.

# I

On October 1, 2014, Edward Bennett filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). He alleged that Defendant Nucor Steel Gallatin, Inc. ("Gallatin") unlawfully rescinded a job offer after discovering his record of disability. [R. 1-1 at 1.] Bennett also suggested that, in his initial interview, a representative of Gallatin told him the job—titled Hot Rolling Department Shift Manager—would require only "hands off" work. [R. 8 at 4.] Gallatin answered Bennett's charge by stating that it rescinded his offer only "after the occupational doctor who conducted his post-offer, pre-employment medical examination determined that he could not safely perform the essential functions of the highly safety-sensitive [position], with or without reasonable accommodation." [R. 8-4 at 2.]

The EEOC then issued a Request for Information. After encountering some resistance from Gallatin, the Commission finally procured a list of the persons involved in Bennett's recruiting and interview process. [R. 1-1 at 2.] In an email sent to Gallatin on March 5, 2015, the EEOC's investigator informed the company that "the next step in my investigation is to conduct an on-site visit and conduct interviews with individuals that I think will have relevant information to aid in my investigation." [*Id.*] In its response on April 16, 2015, however, Gallatin stated, "we simply do not feel that coming onsite is necessary []or relevant to your investigation." [*Id.*] Instead, the company offered "to provide the individuals requested for interviews at the EEOC office or an 'offsite' location." [*Id.*] Shortly thereafter, the EEOC issued a subpoena requiring Gallatin to permit on-site access "to conduct witness interviews, examine the facility, and obtain/request any additional information as it pertains to the Rolling Shift Manager position." [R. 8-1 at 1.]

On May 5, 2015, Gallatin filed a Petition to Revoke and/or Modify the Subpoena with the

EEOC, claiming that "onsite interviews are not relevant nor material and place [an] unnecessary burden on the employer and require a judicial warrant." [R. 8-11 at 5.] The Commission denied Gallatin's petition in June 2015, directing Gallatin "to permit an on-site examination of its facility . . . within ten (10) days of the receipt of this Determination." [R. 1-1 at 3.] In a letter sent to the EEOC a few days later, Gallatin informed the Commission that it would not consent to an on-site visit "without a court order and/or valid warrant." [*Id*.] The Commission then petitioned this Court to order Gallatin to "show cause why it should not be compelled to comply with the subpoena issued upon it." [R. 7 at 2.]

The Court ordered the parties to convene for an oral argument held on January 6, 2016. [R. 10.] At the hearing's conclusion, the Court directed the parties to file any additional briefing necessary to address the "case law relevant to the question of whether a warrant is required in this particular case." [*Id.* at 1.] The parties filed their responses later that month, and the dispute is now ripe for review. [R. 11, 12.]

## II

### A

Before reaching the warrant issue, the Court must briefly address a threshold question raised by Gallatin in its final brief. Although Gallatin only objected to the Commission's *warrantless* entry in its initial briefing and at oral argument, the company now tangentially claims that the EEOC simply does not have the statutory authority to conduct *any* on-site examination of commercial property, regardless of whether an owner consents to that entry.[1] The company cites Title VII of the Civil Rights Act of 1964, which states that the EEOC shall "have access to, for the purposes of examination, and the right to copy any evidence of any

---

[1] Because Gallatin raised this issue for the first time in its final brief, the EEOC has not provided any argument to counter Gallatin's claim.

3

person being investigated or proceeded against." 42 U.S.C. § 2000e-8(a).[2] Gallatin believes that this language does not "expressly afford a right of entry to the EEOC." [R. 11 at 3.] And because Congress has not modified this language since its enactment, Gallatin likewise argues that the legislature "never intended for the EEOC to have such a statutory right." [*Id.*]

There are two problems with this claim. First, Gallatin fails to account for the EEOC's long and untroubled history of conducting myriad on-site investigations of private commercial property throughout the United States. As the Commission notes, "[e]very working day, EEOC investigators across the nation perform on-site investigations at a multitude of differing worksites." [R. 1-1 at 10.] If "Congress never intended for the EEOC to have such a statutory right," it is curious that the legislature has remained silent in the face of the Commission's habitual and pervasive exercise of that right for many decades.

Of course, congressional silence cannot trump the plain language of the statute.[3] But here, the statutory language expressly provides that the Commission shall "have access to . . . *any* evidence of *any* person being investigated or proceeded against." 42 U.S.C. § 2000e-8(a) (emphasis added). That is not an ambiguous grant.[4] If the EEOC carries the statutory authority

---

[2] The Commission issued its subpoena pursuant to 42 U.S.C. § 12117(a), which provides that the "powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title . . . shall be the powers, remedies, and procedures this subchapter provides to the Commission."

[3] *See, e.g., Rapanos v. United States,* 547 U.S. 715, 750 (2006) (acknowledging that the Court has "recognized congressional acquiescence to administrative interpretations of a statute in some situations," but noting also that absent "overwhelming evidence of acquiescence . . . we are loath to replace the plain text and original understanding of a statute with an amended agency interpretation."). The Court does not consider Congress's silence especially persuasive here, but merely notes that a primary basis for Gallatin's claim—that Congress has not altered the statutory scheme despite numerous opportunities to do so—also cuts against its argument.

[4] Gallatin also emphasizes that a related provision of the National Labor Relations Act, 29 U.S.C. § 161, "clarifies in the title of its relevant subsection that this language applies to 'documentary evidence.'" [R. 11 at 3.] Even accepting that this subsection somehow displaces the plain language of 42 U.S.C. § 2000e-8(a), "considering the title [of a statute's subsection] is not appropriate unless the statute is ambiguous." *United States v. Cain*, 583 F.3d 408, 416 (6th Cir. 2009). For the reasons explained above, the Court finds no ambiguity in the EEOC's statutory grant.

to require access to "any evidence" relevant to the claims charged—subject always to the pre-compliance review procedures summarized below—it plainly follows that the Commission may enter private commercial property to inspect relevant physical evidence. Given (1) the clarity of the statutory grant and (2) the deference otherwise afforded to an agency's interpretation of its own enabling statute, the Court finds that 42 U.S.C. § 2000e-8(a) supplies the Commission with the authority to perform on-site investigations. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

## B

Gallatin also argues that, regardless of whether the EEOC enjoys the statutory right to enter private commercial property, that entry cannot take place without an administrative warrant. The Court's review of this claim begins with the most influential case to examine the authority of administrative agencies to conduct warrantless searches of private commercial property, *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978). In *Barlow's*, the Supreme Court invalidated a provision of the Occupational Safety and Health Act of 1980 ("OSHA") that authorized the Secretary of Labor to conduct warrantless, nonconsensual searches of private commercial property. *Id.* at 325. The Court noted that "the Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations," including intrusions upon "private commercial property." *Id.* at 312. Accordingly, "unless some recognized exception . . . applies," administrative agencies cannot conduct nonconsensual inspections of private commercial property without a warrant. *Id.* at 313.

The Court qualified, however, that this holding did not necessarily "mean that, as a practical matter, warrantless-search provisions in other regulatory statutes are also constitutionally infirm." *Id.* at 321. Instead, the Court found that "[t]he reasonableness of a

5

warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute." *Id.* In its survey of statutory schemes that may provide for reasonable warrantless searches, *Barlow's* pointed to those statutes that "already envision resort to federal-court enforcement when entry is refused, employing specific language in some cases and general language in others." *Id.* The Court then cited as "exemplary" the language contained in the Animal Welfare Act of 1970, which vests in federal district courts the jurisdiction "specifically to enforce, and to prevent and restrain violations of this chapter, and . . . in all other kinds of cases arising under this chapter." 7 U.S.C. § 2146(c) (1976 ed.). The Court likewise cited the Internal Revenue Code, which provides that "district courts . . . shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such . . . decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Lastly, the Court cited federal statutes governing gasoline inspections, which give "federal district courts . . . jurisdiction to restrain violations and enforce [the] standards" contained in those statutes. *Barlow's,* 436 U.S. at 322 n. 19.

      In a footnote, the Court also recognized that "[t]he District Court did not address the issue [of] whether the order for inspection that was issued in this case was the functional equivalent of a warrant, and the Secretary has limited his submission in this case to the constitutionality of a warrantless search." *Id.* at 325 n. 23. The Court added that, "[o]f course, if the process obtained here, or obtained in other cases under revised regulations, would satisfy the Fourth Amendment, there would be no occasion for enjoining the inspections." *Id.* The Court then held that OSHA's statute was unconstitutional only "insofar as it purport[ed] to authorize inspections without a warrant *or its equivalent.*" *Id.* at 325 (emphasis added).

6

Although the Sixth Circuit has not expressly laid out the criteria necessary to find a pre-compliance injunction "equivalent" to a traditional warrant, courts have repeatedly cited *Barlow's*' recognition that some alternative procedures may be consistent with the Fourth Amendment. *See, e.g., McLaughlin v. Kings Island, Div. of Taft Broad. Co.,* 849 F.2d 990, 993 (6th Cir. 1988) (citing *Barlow's* and noting that an agency's nonconsensual search requires a "warrant or its equivalent"); *Cleveland Const., Inc. v. Occupational Safety & Health Rev. Commn.,* 201 F.3d 440, *3 (6th Cir. 1999) ("Although no inspection warrant or other process is explicitly required by the Act, a search warrant or its equivalent is constitutionally necessary to conduct a nonconsensual OSHA inspection") (quoting *Foti Construction Co., Inc. v. Donovan,* 786 F.2d 714, 716 (6th Cir. 1986)). And in cases where the court found a statutory scheme constitutionally defective, the statute apparently authorized the agency to conduct on-site investigations without any form of pre-compliance review. *See, e.g., Allinder v. State of Ohio*, 808 F.2d 1180, 1183 (6th Cir. 1987) (finding warrant was required and rejecting statute that gave individual inspectors "[f]inal decisions as to what to inspect, how to inspect and when to inspect").

A case of the Fifth Circuit, *United States v. Mississippi Power & Light Co.*, 638 F.2d 899 (5th Cir. 1981), provides the most comprehensive treatment of this issue. In *Mississippi*, the court also emphasized *Barlow's* concern with statutes that "purport[] to authorize inspections without a warrant *or its equivalent.*" *Id.* at 907 (emphasis in original). The court took "the italicized words to mean that a formal judicial warrant is not required in all administrative searches if the enforcement procedures contained in the relevant statutes and regulations provide, in both design and practice, safeguards roughly equivalent to those contained in traditional warrants." *Id.* Thus, if "the statutory or regulatory scheme provides for resort to the federal

7

courts before an inspection is forced upon a party, then the inspection provisions will not themselves run afoul of the Fourth Amendment." *Id*; *see also First Alabama Bank of Montgomery, N.A. v. Donovan,* 692 F.2d 714, 720 (11th Cir. 1982) (citing *Mississippi* and finding that pre-compliance review procedures must provide safeguards "roughly equivalent to those contained in traditional warrants.").

The Court's present task, then, is to (1) consider the "probable cause" standard for issuing an administrative warrant and (2) compare that standard to the pre-compliance review procedures embedded in the Commission's enabling statute and implementing regulations. The Court begins by noting that, relative to a criminal warrant, "a lesser showing of probable cause is required to secure an administrative warrant." *Dow Chem. Co. v. U.S. By and Through Burford*, 749 F.2d 307, 314 (6th Cir. 1984), *aff'd sub nom. Dow Chem. Co. v. U.S.*, 476 U.S. 227 (1986) (citing *Barlow's,* 436 U.S. 307)). Under this relaxed standard, "probable cause justifying the issuance of a warrant for administrative purposes may be based either on 'specific evidence of an existing violation' or on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Engr. & Mfg. Services, LLC v. Ashton*, 387 Fed. Appx. 575, 584 (6th Cir. 2010) (quoting *Trinity Industries, Inc. v. Occupational Safety and Health Rev. Commn.*, 16 F.3d 1455, 1460 (6th Cir. 1994)). In the case of searches premised on individual complaints—rather than planned and/or routine inspections—the "increased danger of abuse of discretion and intrusiveness" requires that the inspection "bear an appropriate relationship to the violation alleged in the complaint." *Trinity*, 16 F.3d at 1460. Thus, to be consistent with the Fourth Amendment, the EEOC's statute and implementing regulations must permit the Court to ensure that (1) the Commission's request

for access flows from "specific evidence of an existing violation," and (2) the investigator's search bears "an appropriate relationship to the violation alleged in the complaint." *Id.*

The Commission's statutes and regulations comfortably meet these requirements. Under 42 U.S.C. § 2000e–9, which incorporates by reference 29 U.S.C. § 161, "[i]n case of contumacy or refusal to obey a subpoena issued to any person, any district court of the United States . . . shall have jurisdiction to issue to such person an order requiring" him or her to "produce evidence" or "to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof." The EEOC's regulatory scheme, meanwhile, provides comprehensive procedural safeguards for a company that refuses to obey a subpoena. The Commission first notifies the company of its intent to perform an inspection; if the company refuses, the agency will issue a subpoena detailing the nature of its request. 29 CFR § 1601.16 (a). The company may then petition the Commission's Director or General Counsel to modify or revoke the subpoena. *Id.* at (b)(1). If the Commission denies this appeal and the company still refuses to comply, then "the General Coun[sel] or his or her designee may institute proceedings to enforce the subpoena" in federal court.[5]  *Id.* at (c)-(d); *see also Shoe Works v. Equal Empl. Opportunity Commn.*, 685 F. Supp. 168, 169-70 (S.D. Ohio 1987) (noting that the EEOC's subpoenas "are not self-executing" and

---

[5] The Commission, citing *Barlow's*, also persuasively argues that ordering an on-site inspection would serve the "specific enforcement needs and privacy guarantees of" its enabling statute. [R. 12 at 6.] The EEOC frequently encounters complaints where, as here, a petitioner challenges an employer's claim that he or she cannot "perform the essential functions of the position at issue with or without reasonable accommodation." [*Id.*] In many cases, the EEOC simply cannot investigate claims like these effectively without inspecting the facility to determine the "essential functions" of the job. Relatedly, in reference to *Barlow's* concern with "privacy guarantees," the Commission also notes that "[i]t is a criminal act for an officer or employee of the EEOC to improperly disclose information obtained" in the course of an investigation. [*Id.*] (citing 42 U.S.C. § 2000e-8(e)).

"can only be enforced by a court in a proceeding in which the plaintiff can raise all of its present objections").

When the Commission seeks enforcement of a subpoena, reviewing courts must determine whether (1) the subpoena is within the agency's authority, (2) the agency has satisfied its own due process requirements, (3) compliance would be "unduly burdensome," and (4) "the information sought is relevant to the charges filed."[6] *See, e.g., Equal Empl. Opportunity Commn. v. Am. & Efird Mills, Inc.,* 964 F.2d 300, 303 (4th Cir. 1992); *Equal Empl. Opportunity Commn. v. Bay Shipbuilding Corp. v. Shell Oil Co.,* 466 U.S. 54, 94 (1984); *Equal Empl. Opportunity Commn. v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981) (affirming district court's enforcement of EEOC's administrative subpoena where request was "relevant, specific, and not burdensome"). To summarize, the EEOC cannot enforce a subpoena without obtaining approval from a federal district court. The court, in turn, will enforce the subpoena only after determining that the inspection is within the Commission's authority, procedurally sound, relevant to the specific charges filed, and not unduly burdensome.

These requirements, coupled with the procedural steps outlined above, closely track the inquiry made under a traditional warrant procedure. Just as the warrant process requires courts to identify "specific evidence of an existing violation" and order only those inspections that bear "an appropriate relationship to the violation," the Commission's statutory and regulatory schemes permit only those inspections that are "relevant to the charges filed" and "not unduly

---

[6] The Court has already addressed the question of whether on-site inspections are within the EEOC's authority, and the parties do not dispute that the Commission has satisfied its own due process requirements.

burdensome." *Compare Trinity*, 16 F.3d at 1460, *to Efird Mills,* 964 F.2d at 303.[7] The Court finds that these substantive and procedural components provide "safeguards roughly equivalent to those contained in traditional warrants." *Mississippi*, 638 F.2d at 907. A contrary holding would misconceive the principal concern animating the Court in *Barlow's*, which sought to invalidate a statutory scheme that "devolved almost unbridled discretion upon executive and administrative officers, particularly those in the field." *Barlow's,* 436 U.S. at 323. Here, by contrast, the Commission's investigating officers must abide by the conditions of enforcement expressly detailed below. Gallatin asks the Court to duplicate the efforts of the federal court system by embracing the fiction that the very inquiry contained in *this Order,* in the absence of a formal judicial warrant, is somehow insufficient to provide the company with the safeguards required under the Fourth Amendment. The Court will not accept that invitation. The carefully drawn parameters described below are no less rigorous than those a magistrate judge would impose under a traditional warrant procedure. Gallatin must therefore submit to an on-site investigation, subject to the conditions explained in this Order.

---

[7] Gallatin apparently attempts to distinguish these standards by arguing that "[m]ere relevance is not the standard to justify an administrative warrant, reasonableness is." [R. 11 at 9.] But the test for enforcing the Commission's subpoena—which requires an inquiry into the agency's statutory authority, an examination of its compliance with due process, and a balancing of the relevance of the information sought against the burden of production—plainly carries a consideration of the reasonableness of the agency's request. Courts have consistently recognized this principle. *See, e.g., United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (finding administrative subpoenas are generally enforceable if "the information is reasonably relevant' to the agency's inquiry."); *United States. v. Gurley*, 384 F.3d 316, 321 (6th Cir. 2004) ("The validity of an administrative request for information generally turns on the reasonableness of the request."); *United States v. Morton Salt Co.,* 338 U.S. 632, 652, (1950) ("It is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.").

## C

Having established that a formal judicial warrant is not required here, the Court now turns to Gallatin's specific challenges to the Commission's subpoena. The company supplies five grounds for its refusal to comply. First, Gallatin maintains that, "[t]hroughout the investigation, [it] has provided the EEOC with more than sufficient information concerning the allegations related to the Hot Rolling Shift Manager position," including "all of the documentary information it has requested," an offer to supply video recordings of the facility, and an offer to provide "in-person interviews of the individuals named in [the EEOC's] subpoena" at a "convenient off-site location." [R. 8 at 2-3.] Gallatin thus argues that an on-site inspection at this stage would be "premature" because the EEOC has yet to conduct off-site interviews of "the witnesses named in the subpoena to determine if further fact-finding is even necessary for its investigation." [R. 8 at 11.]

This argument, which appears as a constant refrain throughout Gallatin's briefing, is essentially a "take my word for it"-style defense. But as the Commission properly observes, "like any other investigative body, [the EEOC] cannot simply accept the declarations of the company." [R. 1-1 at 7.] Instead, an "appropriate investigation requires an actual review of the workplace at issue." [*Id.*] Even after conducting all off-site interviews with Gallatin's employees, the EEOC cannot reasonably resolve Bennett's claims without performing its own investigation of the position and its associated responsibilities.

Second, Gallatin claims that an on-site inspection would be "irrelevant" to the investigation because "it will not aid in the determination of what the essential functions of the position are, given that such observation has no bearing on any of the six criteria weighed by the 6th Circuit in assessing essential functions." [R. 8 at 5.] In *Keith v. County of Oakland*, 703

F.3d 918 (6th Cir. 2013), the court held that "[f]actors to consider when determining whether a job function is essential to the position include: (1) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs." *Id.* at 925-26. The court also emphasized that "whether a job function is essential is a question of fact." *Id.* at 926. Gallatin's contention that on-site observation would have "no bearing" on these criteria is unconvincing. At the very least, an on-site visit would aid in determining (1) the amount of time spent performing the function, (2) the consequences of not requiring performance of the function, and (3) the current work experience of incumbents in similar jobs. This is especially true given Bennett's claim that a supervisor told him the job would require only "hands off" work. [R. 8 at 4.]

Third, Gallatin claims the EEOC's subpoena "is overbroad given that it does not state with any specificity what is being sought." [R. 8 at 5.] As previously stated, the EEOC's subpoena requires Gallatin to permit on-site access "to conduct witness interviews, examine the facility, and obtain/request any additional information as it pertains to the Rolling Shift Manager position." [R. 8-1 at 1.] The Court finds that the subpoena's nebulous request to "examine the facility," without any limitation to those areas of the facility that specifically relate to the job functions in dispute, is overbroad. At the same time, however, Gallatin's related claim that the subpoena should "state with . . . specificity what is being sought" is unpersuasive. Precisely because Gallatin refuses to provide on-site access—and thus continues to control the universe of information available to the Commission—the EEOC cannot state with specificity every piece of information that might be relevant to its on-site investigation. This point underscores the

overarching flaw in many of Gallatin's arguments—namely, the presumption that the information Gallatin itself chooses to provide the Commission, and nothing more, should be sufficient to resolve Bennett's claim.

In view of these two competing considerations, the Court finds that the Commission's investigator may only inspect those areas of the facility that he or she reasonably believes to be "relevant to the charges filed." *Trinity*, 16 F.3d at 1460. Although the investigator cannot anticipate with particularity every piece of relevant information that he or she may uncover at the facility, this uncertainty does not provide the Commission with an unmitigated license to roam the property in search of relevant information. The investigator must focus his or her inquiry on those items of evidence directly relevant to the Hot Rolling Department Shift Manager position.

Fourth, Gallatin asserts that the "amount of time necessary for the investigator to gain a reliable understanding of the essential functions of the shift manager position would be unduly burdensome and disruptive to business operations." [R. 8 at 21.] The company notes that "the job duties [of the position for which Bennett applied], which vary day-to-day to meet the needs of production, are performed over a 300,000 square foot department within Gallatin's production facility and involve the operation of several pieces of heavy machinery, including a 130 ton overhead crane." [*Id.* at 4.] At oral argument, Gallatin's counsel also stated that the company is on a "reduced schedule so they are not operating as much as they would like to because of market conditions," and thus to "have an investigator come on to the property and see the actual job functions being performed would probably require a very, very long observation period that would [take place over] the course of several hours over several days." [TR: Oral Argument at 29.]

This argument hinges on a distortion of the "undue burden" test. Rather than address the

burden created by the scope of the *subpoena*—which entails a rather routine request for access to the facility—Gallatin attempts to focus the Court's attention solely on the peculiarities of the position itself. But the mere fact that a job requires varied and complex tasks, or that those tasks may be performed at irregular intervals due to market conditions, cannot alone support denial of on-site access. If that were the case, many of the EEOC's powers would be arbitrarily limited to claims involving simple, rather than varied or complex, forms of employment. That cannot be the standard.

And more to the point, Gallatin does not persuasively explain how the presence of an investigator at the facility would actually impose an undue burden. Apart from alluding to the safety concerns discussed below, Gallatin's only support for this claim is that a proper investigation would require a "very long observation period that would [take place over] the course of several hours over several days." [*Id.*] But the limitation imposed in this Order—which requires the Commission to limit its investigation to evidence directly related to the Hot Rolling Department Shift Manager position—will significantly reduce the amount of time necessary for the investigator to complete his or her work. The Commission also does not seek production of obscure or inaccessible material, but simply wishes to observe employees and/or inspect certain machinery lying in plain sight. The Court struggles to determine how the mere presence of an investigator at the facility—even under Gallatin's proposed worst case scenario—would impose a burden sufficiently severe to warrant the Commission's wholesale exclusion from the property. *See Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 859 (1983) (finding only that, "[i]f the proposed [agency] inspection would in fact cause a high degree of interference with [the defendant's] business, a credible argument could be made that compliance would be unreasonable and unduly burdensome and that the [agency's] access should therefore be limited

in some way."); *Doe v. United States*, 253 F.3d at 268-69 (6th Cir. 2001) (rejecting party's "rather general and conclusory" claim that complying with administrative subpoena would be "unduly burdensome" and finding no "meaningful burden" sufficient to excuse party from compliance). It is likewise difficult to determine how the alternatives proposed by Gallatin—including, for example, interviewing all relevant employees at an off-site location and providing video recordings of all relevant parts of the facility—would impose a substantially lesser burden than permitting on-site access.

The Court also adds that the reasonableness of the Commissions' investigation lies at the intersection of the "relevance" and "undue burden" tests. *See Doe*, 253 F.3d at 268 ("[T]his Court must weigh against the relevance of the requested material the burden that would be placed on [the party] in producing it."). If the relevance of the information sought is marginal and the burden of production is substantial, the Commission's investigator must not seek access to that information. Here, however, evidence about the nature of the Hot Rolling Department Shift Manager position—including the question of whether it requires only "hands off" work—will likely prove essential to the resolution of Bennett's claim. And as explained above, the EEOC cannot fulfill its statutory obligations without independently examining the evidence relevant to Bennett's charge, irrespective of Gallatin's own characterization of the responsibilities associated with the position. Providing access to this evidence may be burdensome, but not unduly so.

Finally, Gallatin claims that permitting the EEOC to enter the facility would raise "safety concerns" related to the "inherent dangers of the work environment and industrial equipment machinery." [R. 1-1 at 10.] Gallatin does not explain, however, why these dangers—as compared, for example, to those dangers associated with virtually any work environment

16

involving industrial machinery—are sufficiently extraordinary to warrant the Commission's total exclusion from the premises. The Commission notes that, "[e]very working day, EEOC investigators across the nation perform on-site investigations at a multitude of differing worksites," from "coal mines to sky scraper constructions, to yes, even steel mills." [*Id.*] The EEOC is well-equipped to take reasonable precautions before inspecting facilities like this one. If the "inherent dangers of the work environment" were alone sufficient to refuse on-site inspections, a vast array of worksites that happen to include "industrial equipment machinery" would be summarily excluded from these investigations. That, too, cannot be the standard.

### III

For the reasons explained above, the Court finds that this Order provides all the protections guaranteed to the Defendant under the Fourth Amendment. The Court also concludes, however, that the Commission's existing subpoena is overbroad insofar as it requests general permission to "examine the facility." [R. 8-1 at 1.] Accordingly, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** as follows:

(1) Defendant Nucor Steel Gallatin, Inc. **SHALL PERMIT** an investigator of the Equal Employment Opportunity Commission to perform an on-site inspection of Gallatin's business premises; and

(2) The investigator **SHALL LIMIT** his or her inspection to evidence directly related to the Hot Rolling Department Shift Manager position and its associated responsibilities. The investigator may not generally or indiscriminately search the facility for evidence relevant to Bennett's claims, and must only inspect those areas that he or she reasonably believes will provide evidence relevant to the position.

This 28th day of April, 2016.



Gregory F. Van Tatenhove
United States District Judge